**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES DIVISION OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS,<br><br>      Petitioner,<br><br>      v.<br><br>GRAND TRUNK WESTERN RAILROAD COMPANY,<br><br>      Respondent. | No. 25-cv-3913<br>Judge Franklin U. Valderrama |

**ORDER**

Petitioner Brotherhood of Maintenance of Way Employes Division of the International Brotherhood of Teamsters ("BMWED") filed this enforcement action against Grand Trunk Western Railroad Company ("Grand Trunk"), to enforce Award No. 138 of Public Law Board ("PLB") 7599, an arbitral board created by the parties under the Railway Labor Act ("RLA"). R.[1] 14, Answer & Countercl. ¶¶ 17–24. Grand Trunk, in turn, filed a counterclaim seeking to vacate the Award on public-policy grounds. *Id.* BMWED now moves to dismiss the counterclaim under Federal Rule of Civil Procedure 12(b)(6). R. 17, Mot. Dismiss; R. 18, Mem. Dismiss. For the reasons stated below, the motion is granted.

---

[1] Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

## Background

BMWED is the collective bargaining representative under the RLA for certain employees of Grand Trunk. Answer & Countercl. ¶ 1. Grand Trunk is a carrier within the meaning of the RLA. *Id*. ¶ 2. The parties are bound by a collective bargaining agreement ("CBA") governing the terms and conditions of employment for BMWED-represented employees. *Id*. ¶ 3. Michael Belcher was previously a member of the bargaining unit covered by the CBA and had established seniority in Grand Trunk's Maintenance of Way Department. *Id*. ¶ 9. Belcher later moved into management but continued to claim seniority rights under the CBA. *Id*. ¶ 10.

Illinois Central terminated Belcher on October 19, 2022. *Id*. ¶ 1. Shortly thereafter, on November 4, 2022, Belcher attempted to exercise his seniority and report to a Trackman position covered by the CBA. *Id*. ¶¶ 12–13. Grand Trunk refused to allow him to return to work and directed him to leave the property. *Id*. ¶ 13. BMWED then advised Grand Trunk that, if it sought to remove Belcher from service under the CBA, it was required to proceed under Rule 25 and hold a formal investigation hearing. *Id*. ¶ 14. When no such hearing was scheduled, BMWED filed a claim on Belcher's behalf. *Id*. ¶¶ 15–16. Grand Trunk denied the claim, taking the position that Belcher's termination from management ended his employment with the railroad for all purposes, including under the CBA. *Id*. ¶ 16.

The parties then created Public Law Board 7599 ("PLB 7599") under the RLA to resolve the dispute. *Id*. ¶ 17. In its submission to the Board, BMWED asserted that Grand Trunk violated the Agreement when it refused to allow Belcher to exercise his

Trackman seniority beginning November 4, 2022, and sought a remedy requiring that Belcher be compensated for all lost time and permitted to return to work. Mem. Dismiss at 3. Grand Trunk, for its part, argued that Belcher was not entitled to return to service under the CBA and, at most, was entitled only to a Rule 25 hearing. *Id.* at 3–4.

On January 10, 2025, PLB 7599 issued Award No. 138 (the Award). Answer & Countercl. ¶¶ 22–24. The Board sustained BMWED's claim and directed Grand Trunk to comply with the Award within 30 days. *Id.* ¶ 24. The Award required Grand Trunk to permit Belcher to return to work and compensate him for lost time. Mem. Dismiss, at 4. Grand Trunk did not comply. Instead, it sent Belcher a notice of formal investigation dated January 17, 2025. *Id.* ¶ 25. It also has not paid him the compensation awarded by the Board. *Id.* ¶ 27.

BMWED sued Grand Truck seeking to enforce the award. R.1. Grand Truck answered the complaint, along with a counterclaim, seeking to vacate the Award on public policy grounds. *See generally id.* Grand Trunk's counterclaim relies heavily on separate litigation brought in the Northern District of Indiana by Illinois Central against Belcher. According to the counterclaim, Belcher worked for Illinois Central from 2002 until his termination in October 2022, most recently in its finance department. *Id.* ¶ 1. Grand Trunk alleges that Belcher wrote and maintained code for Illinois Central's financial systems, disabled those systems, and then demanded compensation in exchange for restoring them. *Id.* ¶¶ 13–24. Illinois Central then sued Belcher and obtained a temporary restraining order (TRO). *Id.* ¶ 27; R. 14-2, R. 14-2,

Exh. 2, TRO at 1. Grand Trunk further alleges that Belcher violated the TRO, failed to return company materials, lied to the Indiana court, and destroyed evidence. Answer & Countercl. ¶¶ 31–39; R. 14-3, R. 14-3, Exh. 3, Contempt Order at 4–10. The Indiana district court later entered contempt sanctions and a preliminary injunction after finding, among other things, that Illinois Central had shown a likelihood of success on its trade-secret claims. *Id.* ¶¶ 37–39; R. 14-3, at 1; R. 14-4, Exh. 4, Prelim. Inj. at 12–13.

### Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

That said, because the counterclaim seeks vacatur of an arbitration award, the Rule 12(b)(6) analysis must be considered in light of the law's highly deferential treatment of arbitral decisions. "Judicial review of arbitration awards is tightly limited. Confirmation is usually routine or summary, and a court will set aside an arbitration award only in very unusual circumstances." *Bartlit Beck LLP v. Okada,* 25 F.4th 519, 522 (7th Cir. 2022) (cleaned up).[2] Still, the FAA authorizes a court to vacate an arbitrator's award:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

"This list is exclusive; neither judges nor contracting parties can expand it." *Affymax, Inc., v. Ortho-McNeil-Janssen Pharms., Inc.,* 660 F.3d 281, 284 (7th Cir. 2011). Under the FAA, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 586 U.S. 63, 68 (2019) (cleaned up). A party seeking vacatur under Section 10(a)(4) "bears a heavy

---

[2] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations,* 18 Journal of Appellate Practice and Process 143 (2017).

burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). So long as "the arbitrator (even arguably) interpreted the parties' contract," it does not matter if he or she "got its meaning right or wrong." *Id.*; *see also Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1025 (7th Cir. 2013).

## Analysis

Grand Trunk seeks vacatur of the Award on the basis that enforcing the Award would contravene public policy. Answer & Countercl. ¶¶ 40–42. Judicial review of arbitration awards under the RLA, however, is "among the narrowest known to the law." *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 91, 94 (1978). The statute permits a court to set aside an award only where the Board failed to comply with the RLA, failed to conform or confine itself to matters within its jurisdiction, or where fraud or corruption infected the award. 45 U.S.C. § 153 First (q). Grand Trunk asserts none of those grounds. Rather, it asks the Court to vacate the Award because Belcher's reinstatement purportedly offends the public policies embodied in trade-secret law and the Indiana court's related orders. Answer & Countercl. ¶¶ 40–42.

BMWED moves to dismiss the counterclaim, arguing that public policy is not a cognizable basis to vacate an RLA award and that, even if it were, Grand Trunk has failed to plausibly allege that this award violates such a policy. Mem. Dismiss at 5–13. Because the latter argument is dispositive, the Court begins there.

I.     **Public Policy Review**

Even where available, a public-policy challenge to an arbitration award is limited. *Zimmer v. Biomet Holdings, Inc. v. Insall*, 108 F.4th 512, 517 (7th Cir. 2024).

6

A court may vacate an award only where it violates an "explicit," "well defined," and "dominant" public policy, and that policy must be ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests." *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983); *Zimmer* 108 F.4th at 517. Just as important, the inquiry focuses on the Award itself rather than the employee's underlying conduct. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987). The question, then, is whether enforcement of the Award—not the employee's alleged conduct—would violate public policy. *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62–63 (2000). Thus, even assuming without deciding that such review applies in the RLA context, Grand Trunk must plausibly show that the Award itself requires relief the law forbids.

Grand Trunk's counterclaim alleges that the Award should be vacated because Belcher's reinstatement would violate the public policies reflected in federal and state trade-secret law and the Indiana court's orders. Answer & Countercl. ¶¶ 40–42. According to the counterclaim, Belcher disabled Illinois Central's financial systems, demanded compensation to restore them, violated a temporary restraining order, lied to the Indiana court, and became subject to contempt sanctions and a preliminary injunction. *Id*. ¶¶ 11–42. In Grand Trunk's view, those allegations establish that enforcement of the Award would offend well-defined policies against trade-secret misappropriation and disobedience of court orders. *Id*. ¶¶ 40–42.

7

BMWED argues that Grand Trunk fails to state a claim for vacatur even if the Court assumes that a narrow public-policy challenge is available under the RLA. Mem. Dismiss at 8-13. The way BMWED sees it, Grand Trunk identifies no statute, court order, or precedent that specifically forbids reinstating or compensating an employee accused of trade-secret misconduct. *Id.* at 10-13. Rather, BMWED contends that Grand Trunk improperly focuses on Belcher's conduct when the governing case law requires the Court to focus on the Award itself. *Id.* at 9-11. According to BMWED, the relevant question is not whether Belcher's alleged misconduct offended public policy, but whether enforcement of the Award would. *Id.* (citing *Misco*, 484 U.S. at 43; *Eastern Associated Coal Corp. v. United Mine Workers of America*, 531 U.S. 57, 62-63) (2000). BMWED further argues that courts may not use public policy to "judicialize" arbitration whenever the underlying conduct appears troubling. *Id.* at 9 (citing *E.I. DuPont de Nemours & Co. v. Grasselli Emps. Indep. Ass'n of E. Chi., Inc.*, 790 F.2d 611, 615 (7th Cir. 1986)).

BMWED also submits that Grand Trunk's theory fails because the cases require a policy that specifically militates against the relief ordered by the arbitrator, not merely a policy condemning the employee's behavior. *Id.* at 10-13 (citing *Chrysler Motors Corp. v. Allied Indus. Workers of Am.*, 959 F.2d 685, 687 (7th Cir. 1992); *BLET v. Union Pac. R.R. Co.*, 882 F. Supp. 2d 1032, 1040 (N.D. Ill. 2012), aff'd, 719 F.3d 801 (7th Cir. 2013)). In BMWED's view, the Award's commanded relief is limited to reinstatement and lost wages. *Id.* It does not require Grand Trunk to violate trade-

secret law, disobey the Indiana court's orders, or place Belcher back in the Illinois Central finance position involved in the Indiana litigation. *Id.* at 10-13.

Grand Trunk responds that its theory is not based on abstract public-interest concerns, but on positive law. R. 21, Resp. at 9-12. According to Grand Trunk, the relevant legal sources are the Defend Trade Secrets Act, Indiana trade-secret law, and the Indiana court's TRO, contempt order, and preliminary injunction. *Id.* at 10-11. Grand Trunk maintains that these authorities satisfy the requirement that the asserted policy be "explicit," "well defined," and "dominant." *Id.* at 9 (citing *W.R. Grace*, 461 U.S. at 766; *Chrysler Motors*, 959 F.2d at 687). Grand Trunk further argues that the Court cannot view the Award in a vacuum. *Id.* at 10-12. In Grand Trunk's view, the practical effect of the Award is to require reinstatement despite judicial findings and allegations that Belcher misappropriated trade secrets and violated court orders. *Id.* When viewed through that prism, asserts Grand View, an arbitration award may be vacated where compliance with the relief ordered would itself violate positive law. *Id.* at 10 (citing *Titan Tire Corp. of Freeport, Inc. v. United Steelworkers of Am.*, 734 F.3d 708, 729 (7th Cir. 2013)). Grand Trunk thus insists that its counterclaim targets the Award itself, not merely Belcher's misconduct in the abstract. *Id.* at 9–10.

BMWED replies that Grand Trunk's attempt to ground its theory in positive law does not save the counterclaim. R. 22, Reply at 4-8. According to BMWED, *Titan Tire* cuts the other way, as there, the award affirmatively required illegal payments in violation of Section 302(a) of the LMRA, whereas Grand Trunk identifies no

comparable statute or order that specifically bars reinstatement or backpay here. *Id.* (citing *Titan Tire*, 734 F.3d at 729). BMWED further argues that the Indiana orders concern Illinois Central's confidential information and Belcher's conduct in that litigation, while Award No. 138 concerns Belcher's return to a bargaining-unit position at Grand Trunk. *Id.* at 7-8. From BMWED's point of view, even serious misconduct does not itself establish a public-policy bar unless the policy specifically militates against the arbitrator's actual relief. *Id.* at 4-6 (citing *BPS Guard Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am.*, 735 F. Supp. 892, 895 (N.D. Ill. 1990); *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173*, 886 F.2d 1200, 1212–13 (9th Cir. 1989); *Univ. of Chi. Med. Ctr. v. Int'l Bhd. of Teamsters, Loc. 743*, 235 F. Supp. 3d 1023, 1026 (N.D. Ill. 2016)). BMWED also points to cases upholding reinstatement awards involving egregious conduct where no law specifically required discharge or prohibited reinstatement. *Id.* at 5-6 (citing *U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 839 F.2d 146, 150 (3d Cir. 1988); *Chrysler Motors*, 959 F.2d at 687-89; *Saint Mary Home, Inc. v. SEIU, Dist. 1199*, 116 F.3d 41, 45–46 (2d Cir. 1997)). In short, BMWED maintains that Grand Trunk alleges serious wrongdoing, but not a legal prohibition on enforcement of the Award itself. The Court agrees.

The Supreme Court has made clear that the public-policy exception is narrow. *W.R. Grace*, 461 U.S. at 766. The inquiry does not turn on whether the employee engaged in serious or even unlawful misconduct. Rather, the relevant question is whether enforcement of the award itself would violate public policy. *Misco,* 484 U.S.

at 43. As the Supreme Court later reiterated, the Court's focus must remain on "the specific acts ordered by the arbitrator," not on the employee's underlying conduct in the abstract. *Eastern Associated Coal*, 531 U.S. at 62-63. The Seventh Circuit has applied the same principle, emphasizing both that the asserted policy must be grounded in positive law and that the exception does not permit a court to revisit the merits of the arbitrator's decision. *See Chrysler Motors*, 959 F.2d at 687; *E.I. DuPont*, 790 F.2d at 615. Accordingly, it is not enough to identify an important public policy against some category of wrongdoing. The policy must specifically militate against the relief the arbitrator ordered. *See BPS Guard Services*, 735 F. Supp. at 895 (quoting *Stead Motors*, 886 F.2d at 1212-13). As the Seventh Circuit has explained, "[a]n arbitral award most clearly violates public policy when it creates an explicit conflict with statutory laws or well-established and easily discernible precedent." *Zimmer,* 108 F.4th at 520 (7th Cir. 2024)

Here, Grand Trunk's counterclaim does not plausibly allege that the Award itself violates an explicit, well-defined, and dominant public policy. Rather, the counterclaim alleges serious misconduct by Belcher. Answer & Countercl. ¶¶ 11–42. The Court does not minimize the gravity of those allegations; those allegations may implicate public policies reflected in the Defend Trade Secrets Act, Indiana trade-secret law, and the Indiana court's orders. *Id.* ¶¶ 40-42. Crucially, however, Grand Trunk identifies no statute, order, or precedent that specifically prohibits Grand Trunk from doing what the Award requires—allowing Belcher to return to work and paying him lost wages. *See id.* ¶¶ 22–27, ¶¶ 40–42. That omission is dispositive.

11

Nor does *Titan Tire* save Grand Trunk's counterclaim. There, the Seventh Circuit vacated an arbitration award because compliance with the award itself would have required the employer to violate Section 302(a) of the LMRA by making unlawful payments to union representatives. *Titan Tire*, 734 F.3d at 729. No such conflict is plausibly alleged here. Answer & Countercl. ¶¶ 40-42. At most, the counterclaim alleges that Belcher's prior conduct makes reinstatement inadvisable. *Id.* ¶¶ 11-42. Under *W.R. Grace, Misco, and Eastern Associated Coal*, such allegations, without more, are insufficient.

The same conclusion follows from the reinstatement cases BMWED cites. Courts have upheld reinstatement awards where the employee's conduct was troubling—even unlawful—so long as no positive law specifically required discharge or prohibited reinstatement. *See United States Postal Serv.*, 839 F.2d at 150; *Chrysler Motors*, 959 F.2d at 687-89; *Saint Mary Home*, 116 F.3d at 45-46. Courts in this district have likewise recognized that proving an arbitration award violates public policy is a "formidable task." *Univ. of Chi. Med. Ctr.*, 235 F. Supp. 3d at 1026. Grand Trunk has not made that showing here.

Nor does the Indiana litigation alter this analysis. Those orders concern Belcher's alleged misuse of Illinois Central's financial systems, confidential information, and trade secrets. Answer & Countercl. ¶¶ 11–39; R. 14-2, at 1, 9–10; R. 14-3, at 1, 4–10; R. 14-4, at 12–13. The Award, however, addresses something different: Belcher's reinstatement to a bargaining-unit Maintenance of Way position at Grand Trunk and compensation for lost time. Answer & Countercl. ¶¶ 22–27.

12

Grand Trunk does not plausibly allege that the Indiana court held Belcher could not hold that position or that complying with the Award would violate any specific term of those orders. Grand Trunk alleges circumstances from which it says a public-policy conflict should be inferred, but it does not identify any express legal prohibition on reinstatement or backpay. *Id.* ¶¶ 11-42. These allegations thus fall short under *Misco* and *Eastern Associated Coal*.

Grand Trunk plausibly alleges serious misconduct by Belcher and an important public policy against trade-secret misappropriation. However, it fails to plausibly allege that the Award itself commands conduct forbidden by law. Because the counterclaim fails to connect the asserted public policy to a legal prohibition on the arbitrator's actual relief—reinstatement and backpay—it fails to state a claim for vacatur on public-policy grounds. The Court concludes that Grand Trunk has failed to plausibly allege that Award No. 138 violates any explicit, well-defined, and dominant public policy, and therefore, the Court need not resolve BMWED's other argument, that public policy is not a cognizable basis to vacate an RLA award. Even assuming, without deciding, that such review is available, Grand Trunk's counterclaim fails for the reasons explained above.

The next issue is whether the dismissal should be with or without prejudice. In its motion to dismiss, BMWED asks the Court to dismiss the counterclaim with prejudice. *See* Mem. Dismiss at 11. Grand Trunk did not ask for leave to file an amended counterclaim should the Court agree with BMWED. While the Court is mindful of the admonition from the Seventh Circuit that district courts should allow

13

a litigant at least one opportunity to amend before dismissing the complaint with prejudice under Rule 12(b)(6), *Tate v. SCR Medical Transp.*, 809 F.3d 343, 346 (2015), here Grand Trunk did not ask for leave to amend. Accordingly, the dismissal is with prejudice.

## Conclusion

For the reasons stated herein, the Court grants BMWED's motion to dismiss Grand Trunk's counterclaim [17] with prejudice.

Dated: March 30, 2026

_____
United States District Judge
Franklin U. Valderrama

14